**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WAYNE LELA and JOHN MCCARTNEY,<br><br>Plaintiffs,<br><br>v.<br><br>WAUBONSEE COMMUNITY COLLEGE and BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 516<br><br>Defendants. | ) | Case No. 14 CV 5417 |

**COMPLAINT**

Plaintiffs Wayne Lela and John McCartney complain against Waubonsee Community College, a two-year public institution of higher learning, and the Board of Trustees of Community College District No. 516 as follows:

**NATURE OF THE CASE**

1. This is a civil rights action to protect the free speech rights of Plaintiffs Wayne Lela and John McCartney, who seek to hand out informational flyers and talk with students, teachers, staff and other members of the community on the campus of Waubonsee Community College. Waubonsee Community College and its governing body, the Board of Trustees of Community College District No. 516 (collectively "WCC") have prevented Plaintiffs from exercising their free speech rights on its campus, citing policies regulating the use of college facilities and prohibiting solicitation. However, the use of college facilities policy discriminates on the basis of viewpoint on its face and is therefore unconstitutional. Additionally, both policies are facially unconstitutionally overbroad and vague, and grant unfettered discretion to college officials so as to serve as a prior restraint on protected speech. Further, as applied to Plaintiffs, these policies

violate their rights to free speech under the First and Fourteenth Amendments to the United States Constitution and Article I, Section 4 of the Illinois Constitution.

2. By policy and practice, WCC unlawfully restricts constitutional rights to free expression and has restricted Plaintiffs' constitutional rights specifically. Plaintiffs challenge WCC's policies and enforcement practices on their face and as applied to Plaintiffs. This action seeks declaratory and injunctive relief, damages and attorneys' fees.

## JURISDICTION AND VENUE

3. This action arises under the United States Constitution, particularly the First and Fourteenth Amendments, Article I, Section 4 of the Illinois Constitution, and 42 U.S.C. §§ 1983 and 1988.

4. This Court has jurisdiction of this claim pursuant to 28 U.S.C. §§ 1331 and 1343. The state law claims are so closely related to the federal claims as to create supplemental jurisdiction under 28 U.S.C. § 1367(a).

5. This Court is authorized to grant Plaintiffs' prayer for declaratory judgment under 28 U.S.C. §§ 2201 and 2202, Federal Rule of Civil Procedure 57 and 740 ILCS 23/5(b).

6. This Court is authorized to grant Plaintiffs' prayer for injunctive relief under 42 U.S.C. § 1983, Federal Rule of Civil Procedure 65 and 740 ILCS 23/5(b).

7. This Court is authorized to award Plaintiffs' attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and 740 ILCS 23/5(c).

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the instant claim occurred within this District and because Defendants are located in this District.

## PARTIES

9. Plaintiffs Wayne Lela and John McCartney are individuals, and members of an organization called Heterosexuals Organized for a Moral Environment, who engage in free speech activity in public areas, including college campuses, by talking to members of the public and distributing flyers about homosexuality.

10. Waubonsee Community College is a two-year public institution of higher learning organized and existing under the laws of the State of Illinois which encompasses Illinois Community College District #516, a 600-square-mile district that includes southern Kane County and portions of Kendall, DeKalb, LaSalle and Will counties.

11. The Board of Trustees of Community College District No. 516, also known as the Board of Trustees of Waubonsee Community College, is the governing body of Waubonsee Community College pursuant to 110 ILCS 805 et seq., and has adopted certain policies governing the organization and operation of Waubonsee Community College, including the policies challenged by Plaintiffs in this cause of action.

## STATEMENT OF FACTS

12. In early January 2014, Wayne Lela contacted administrators at WCC seeking to pass out flyers to students and other passersby. The flyers were sponsored by Heterosexuals Organized for a Moral Environment and were entitled "The Uncensored Truth About Homosexuality" and "'Gay' Activism and Freedom of Speech and Religion." **Exhibit A.** Nothing in the flyers solicited donations or requested anything of value from the public. The flyers were solely for informational purposes.

13. WCC provides a “free speech” area on its campus for students and members of the public to engage in free speech activity and provide information to students, staff and passersby. This is where Plaintiffs wished to pass out flyers and engage in free speech activity.

14. WCC administrators denied permission to Mr. Lela to distribute the flyers on the WCC campus.

15. On or about January 16, 2014, Mr. Lela contacted a WCC representative about his desire to distribute the flyers on WCC’s campus and was referred to another WCC employee, Debby Wilhelmi. Ms. Wilhelmi asked Mr. Lela to provide her with copies of the flyers he intended to distribute, which he did. At no point did the WCC representative or Ms. Wilhelmi indicate to Mr. Lela that outside groups were not allowed to engage in speech activity on WCC’s campus.

16. On January 21, 2014, Mr. Lela received a letter from David Quillen, Executive Vice President of Finance and Operations, denying Mr. Lela’s request to distribute the flyers on WCC’s campus. **Exhibit B.**

17. Mr. Quillen’s January 21 letter indicates that WCC “consistently limits campus activities to events that are not disruptive of the college’s educational mission.” The Quillen letter also refers to two WCC’s policies: the Use of College Facilities and Services Policy and the Solicitation Policy. The Use of College Facilities policy permits non-college groups to use college facilities.

18. On February 28, 2014, Douglas R. McKusick, Senior Staff Attorney at the Rutherford Institute, sent a letter on behalf of Mr. Lela to Mr. Quillen with the opinion that the denial of his request to distribute flyers on WCC’s campus and application of WCC’s policies on the Use of College Facilities and Services and Solicitation to Mr. Lela violated his First Amendment rights. **Exhibit C.** According to the letter, the denial of Mr. Lela’s request to distribute flyers on WCC’s

campus is unconstitutional viewpoint discrimination because it was made after reviewing the content of Mr. Lela's flyers and because Mr. Quillen's letter indicates that Mr. Lela's activity would be "disruptive" of WCC's educational mission. In addition, according to Mr. McKusick's letter, the application of the Solicitation policy to Mr. Lela violates the First Amendment because the policy grants unfettered discretion to the President or her designee to decide whether to approve a request to use campus grounds.

19. On March 13, 2014, Paulette A. Petretti, attorney at Scariano, Himes and Petrarca, sent a letter to Mr. McKusick, on behalf of WCC, reiterating WCC's denial of Plaintiffs' request to hand out flyers on WCC's campus. **Exhibit D.** Ms. Petretti's letter references three policies of WCC, which she asserts support WCC's denial of Plaintiffs' request: Use of College Facilities and Services (3.200.01), Solicitation (3.250.01) and the Ethics Policy (6.200.03).

**A. THE USE OF COLLEGE FACILITIES AND SERVICES POLICY**

20. The WCC Use of College Facilities and Services policy permits WCC facilities and services to be made available to college and non-college sponsored groups, provided the use does not "interfere or conflict with the normal operations or educational programs of the college" and "is consistent with the philosophy, goals and mission of the college." **Exhibit E.**

21. Mr. Quillen's January 21, 2014 letter finds that the content of Plaintiffs' speech would be "disruptive of the college's educational mission." **Exhibit B.**

22. Ms. Petretti's March 13, 2014 letter explains the meaning of the Use of College Facilities and Services policy, which it provides as a basis for the denial of Plaintiffs' speech on WCC's campus:

> [T]he College provides equal educational opportunities and prohibits discrimination against any protected class, in accordance with federal, state and local laws and ordinances. [Plaintiffs have] expressly communicated [their] unwillingness to accept the authority of the laws prohibiting discrimination based

> on sexual orientation. [Plaintiffs] seek[] to disseminate messages containing disparaging, demeaning and offensive messages to the College's campus population about homosexuality. As you may know, discrimination can occur in the form of words, actions or conduct that serve to create a hostile educational environment. [Plaintiff's] aggressive backlash against established civil rights laws **directly interferes with the philosophy and the educational processes of the College because it would undermine the College's mission to provide an educational environment free of hostility toward any student or employee regardless of** race, color, religion, sex, national origin, ancestry, age, marital status, physical or mental disability, military history or **sexual orientation**. [Plaintiffs'] campaign objectives to set up a podium at the College to solicit individuals to **adopt its particular cause, which deviates from established law**, is in **direct conflict with and disruptive of the College's mission** to uphold and adhere to the legal requirements for maintaining a non-discriminatory educational environment, free of unlawful hostility.

**Exhibit D** (emphasis added).

**B. THE SOLICITATION POLICY**

23. The Solicitation policy provides that solicitation—particularly commercial, charitable and political solicitation—is only permitted with "the written approval from the President and his/her designee" but sets forth no criteria to be applied in granting or denying such approval. **Exhibit F.**

24. The term "solicitation" is not defined. However, the policy does define "commercial solicitation" as "that conducted for private gain and resulting in the exchange of goods or services for remuneration." The policy also states that "Charitable solicitation shall cover those charities whose purpose it is to benefit society or any considerable part thereof through benevolent and humanitarian activities without the enhancement of the private wealth of any individual associated therewith."

25. The Solicitation policy references the Ethics policy (6.200.03), but it is not clear for what purpose the Ethics policy is referenced. The reference comes directly after the word "political" and seems to imply that the purpose is to define "political solicitation."

26. The Ethics policy (6.200.03) explicitly states that its purpose is to regulate "the political activities of, and the solicitation and acceptance of gifts by, the officers and employees of [WCC]" in compliance with the Illinois State Officials and Employees Ethics Act, 5 ILCS 430/1-1 et seq. **Exhibit G.** Thus, the Ethics policy, by itself, has no application to the Plaintiffs.

27. The Ethics policy defines "political activity" as:

> any activity in support of or in connection with any campaign for elective office or any political organization, but does not include activities (i) relating to the support or opposition of any executive, legislative, or administrative action, (ii) relating to collective bargaining, or (iii) that are otherwise in furtherance of the person's official duties.

**Exhibit G.**

28. As made clear in Exhibit C, Plaintiffs seek only to distribute flyers on campus, do not seek to solicit money in any way, and, in fact, seek no solicitation of any kind. Rather, Plaintiffs simply seek to distribute information to students and other passersby for no cost and for nothing in return.

29. Plaintiffs' activity is clearly not "commercial solicitation" under the Solicitation policy because Plaintiffs are not seeking any private gain nor are they seeking an exchange of goods or services for remuneration.

30. Plaintiffs' activity is also clearly not "political activity" under the Ethics policy because Plaintiffs are not seeking to support any campaign for elective office or political organization.

31. Plaintiffs' activity is for the benefit of society without the enhancement of the private wealth of any individual associated therewith. Plaintiffs are not soliciting, and their proposed activities do not include soliciting charitable donations or anything else from anyone. They simply seek to provide information.

32. WCC's Solicitation, Ethics and Use of College Facilities and Services policies are express policies, which were enforced and have caused a deprivation of Plaintiffs' First Amendment rights, or will cause a future person deprivation of his or her First Amendment rights. Therefore, WCC may be liable under Section 1983 for violation of Plaintiffs' First Amendment rights pursuant to *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978). *See Roach v. City of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997).

**COUNT I: FACIAL VIOLATION OF THE RIGHT TO FREE SPEECH UNDER THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 4 OF THE ILLINOIS CONSTITUTION – VIEWPOINT DISCRIMINATION**

33. The allegations contained in all preceding paragraphs are incorporated here by reference.

34. It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys. . . . Discrimination against speech because of its message is presumed to be unconstitutional. . . . When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828-29 (1995) (citations omitted).

35. Government violates the First Amendment when it denies access to a speaker solely to suppress the point of view he espouses regardless of forum status. *DeBoer v. Vill. of Oak Park*, 267 F.3d 558, 568 (7th Cir. 2001).

36. WCC's Use of College Facilities and Services policy requirement that any speech be "consistent with the philosophy, goals and mission of the college" is impermissible viewpoint discrimination on its face because it prohibits all speech which espouse views which WCC deems inconsistent and unfavorable with, or critical of, its philosophy, goals and mission, but not views that are consistent or favorable with its philosophy, goals and mission.

37. Ms. Petretti's March 13, 2014 letter confirms that the Use of College Facilities and Services policy discriminates on viewpoint on its face by stating that Plaintiffs' viewpoint is in direct conflict with WCC's mission. Ms. Petretti makes explicit what the policy does on its face: that Plaintiffs' critical views of homosexuality are not allowed but that speech with a positive view of homosexuality is permitted.

38. As the Supreme Court has stated recently, a statute is content based if it required "enforcement authorities" to "examine the content of the message that is conveyed to determine whether" a violation has occurred. *McCullen v. Coakley*, 2014 U.S. LEXIS 4499, *26 (June 26, 2014)

39. The denial of a constitutional right is an irreparable injury *per se* and Plaintiffs are entitled to declaratory and injunctive relief. As a result of being denied the ability to engage in free speech activity under the First Amendment of the United States Constitution and Article I, Section 4 of the Illinois Constitution at WCC, Plaintiffs have suffered damages.

**COUNT II: AS APPLIED VIOLATION OF THE RIGHT TO FREE SPEECH UNDER THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 4 OF THE ILLINOIS CONSTITUTION**

40. The allegations contained in all preceding paragraphs are incorporated here by reference.

41. All of the acts of Defendants, their officers, agents, and employees were executed, and are continuing to be executed, by the Defendants under the color and pretense of the policies, statutes, ordinances, regulations, customs, and usages of the State of Illinois.

42. WCC has prohibited Plaintiffs from using **any** of its property, including the areas in which it regularly permits assembly and other public discourse by other outside groups.

43. By prohibiting Plaintiffs from handing out flyers and talking to students, teachers and other passersby anywhere on WCC's campus, WCC has explicitly and implicitly chilled

Plaintiffs' free speech rights secured by the First Amendment to the United States Constitution as applied to Defendants by the Fourteenth Amendment and Article I, Section 4 of the Illinois Constitution.

44. The application of the Use of College Facilities and Services policy to Plaintiffs violates their free speech rights because the stated reason given to Plaintiffs for not permitting their speech at WCC— that Plaintiffs' speech would be "disruptive of the college's educational mission"—constitutes viewpoint discrimination since Defendants explicitly prohibit Plaintiffs' viewpoint on the issue of homosexuality, but explicitly allow the opposite viewpoint.

45. The application of the Solicitation policy to Plaintiffs violates their free speech rights because the activities Plaintiffs sought to engage in—handing out flyers and talking to individuals about issues of public concern—are not properly understood to be political, charitable, or commercial solicitation. Thus, the application of the Solicitation policy to Plaintiffs' activities was inappropriate and used as an excuse to violate Plaintiffs' free speech rights at WCC.

46. The application of the Ethics policy, either via the Solicitation policy or by itself, to Plaintiffs violates their free speech rights. The Ethics policy by itself only applies to officers and employees of WCC. Further, the application via the Solicitation policy of the definition of "political activity" provided in the Ethics policy does not describe the activities that Plaintiffs sought to engage in at WCC, including handing out flyers and talking to people about a matter of public concern as defined by the Ethics policy.

47. The denial of a constitutional right is an irreparable injury *per se* and Plaintiffs are entitled to declaratory and injunctive relief. As a result of being denied the ability to engage in

free speech activity under the First Amendment of the United States Constitution and Article I, Section 4 of the Illinois Constitution at WCC, Plaintiffs have suffered damages.

**COUNT III: FACIAL VIOLATION OF THE RIGHT TO FREE SPEECH UNDER THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 4 OF THE ILLINOIS CONSTITUTION – OVERBREADTH**

48. The allegations contained in all preceding paragraphs are incorporated here by reference.

49. The Use of College Facilities and Services policy is overbroad because it restricts constitutionally protected free speech activity that is not "consistent with the philosophy, goals and mission of the college."

50. The Solicitation policy is overbroad because it prohibits constitutionally protected speech that falls under the category of "solicitation"—even non-monetary solicitation—anywhere on WCC's campus without the permission of the President.

51. The policies restricting speech on campus at WCC burden far more speech than is necessary to serve the asserted interest. Rather than being narrowly tailored to protect speech as the Constitution requires, WCC's policies chill protected speech activity broadly.

52. The denial of a constitutional right is an irreparable injury *per se* and Plaintiffs are entitled to declaratory and injunctive relief. As a result of being denied the ability to engage in free speech activity under the First Amendment of the United States Constitution and Article I, Section 4 of the Illinois Constitution at WCC, Plaintiffs have suffered damages.

**COUNT IV: FACIAL VIOLATION OF THE RIGHT TO FREE SPEECH UNDER THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 4 OF THE ILLINOIS CONSTITUTION – VAGUENESS**

53. The allegations contained in all preceding paragraphs are incorporated here by reference.

54. A law is void for vagueness if the prohibitive terms are not clearly defined such that a person of ordinary intelligence can readily identify the applicable standard for inclusion and exclusion. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

55. Vague and undefined policies also vest the public officials who must enforce them with unbridled discretion that may be exercised in an inconsistent or discriminatory manner.

56. The Use of College Facilities and Services policy is vague because it restricts constitutionally protected free speech activity that is not “consistent with the philosophy, goals and mission of the college” but does not define what activities are consistent with the philosophy, goals and mission of the college such that a person of ordinary intelligence can readily identify the applicable standard for inclusion and exclusion. Further, interpretation of such language will authorize and/or encourage arbitrary and discriminatory enforcement.

57. The Solicitation policy is vague because it prohibits “solicitation,” which it does not define, anywhere on WCC’s campus without the permission of the President, but does not provide standards by which the President should accept or reject permission to solicit. The term “solicitation” is not clearly defined such that a person of ordinary intelligence can readily identify the applicable standard for inclusion and exclusion. Further, the policy does not provide the President with standards on which to base his or her decision to allow or prohibit solicitation and therefore vests unbridled discretion in the President that may be exercised in an inconsistent or discriminatory manner. The Solicitation policy is vague on its face and violates Plaintiffs’ free speech rights under the United States and Illinois Constitutions.

58. The denial of a constitutional right is an irreparable injury *per se* and Plaintiffs are entitled to declaratory and injunctive relief. As a result of being denied the ability to engage in

free speech activity under the First Amendment of the United States Constitution and Article I, Section 4 of the Illinois Constitution at WCC, Plaintiffs have suffered damages.

**COUNT VI: FACIAL VIOLATION OF THE RIGHT TO FREE SPEECH UNDER THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 4 OF THE ILLINOIS CONSTITUTION – PRIOR RESTRAINT**

59. The allegations contained in all preceding paragraphs are incorporated here by reference.

60. A requirement that any person wishing to engage in "solicitation" must obtain approval from the President that does not provide any standards by which the President may grant or deny such requests constitutes an unconstitutional prior restraint on rights to free speech under the United States and Illinois Constitutions.

61. Defendants' policies vest overly broad discretion in the President or his or her designee to restrict constitutionally protected expression.

62. Defendants' Solicitation policy restricts speech based on the content of the message.

63. Defendants' Solicitation policy is not narrowly tailored to serve a significant governmental interest because it prohibits all speech that could be considered solicitation. Further, the policy does not allow open ample alternatives for communication.

64. Plaintiffs and other similarly situated persons have been, and will continue to be, irreparably injured by being deprived of their rights to free speech under the First Amendment to the United States Constitution and Article I, Section 4 of the Illinois Constitution by Defendants' Solicitation policy.

65. The denial of a constitutional right is an irreparable injury *per se* and Plaintiffs are entitled to declaratory and injunctive relief. As a result of being denied the ability to engage in free speech activity under the First Amendment of the United States Constitution and Article I, Section 4 of the Illinois Constitution at WCC, Plaintiffs have suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment against Defendants and provide Plaintiffs the following relief:

A. A Declaratory Judgment stating that Waubonsee Community College's Use of College Facilities and Services policy constitutes viewpoint discrimination on its face and violates Plaintiffs' free speech rights under the First and Fourteenth Amendments to the United States Constitution and Article I, Section 4 of the Illinois Constitution;

B. A Declaratory Judgment stating that Waubonsee Community College's Solicitation and Use of College Facilities and Services policies as applied to Plaintiffs to prohibit their free speech activities of handing out flyers and talking to people about an issue of public concern anywhere on WCC's campus violate Plaintiffs' free speech rights under the First and Fourteenth Amendments to the United States Constitution and Article I, Section 4 of the Illinois Constitution;

C. A Declaratory Judgment stating that Waubonsee Community College's Solicitation and Use of College Facilities and Services policies are facially overbroad and violate Plaintiffs' free speech rights under the First and Fourteenth Amendments to the United States Constitution and Article I, Section 4 of the Illinois Constitution;

D. A Declaratory Judgment stating that Waubonsee Community College's Solicitation and Use of College Facilities and Services policies are facially vague and violate Plaintiffs' free speech rights under the First and Fourteenth Amendments to the United States Constitution and Article I, Section 4 of the Illinois Constitution;

E. A Declaratory Judgment stating that Waubonsee Community College's Solicitation policy is a prior restraint on free speech and grants unfettered discretion to the President or his or

her designee to determine what solicitation is and is not permitted on the campus, and therefore facially violates Plaintiffs' free speech rights under the First and Fourteenth Amendments to the United States Constitution and Article I, Section 4 of the Illinois Constitution;

F. A preliminary and permanent injunction restraining enforcement of Defendants' Solicitation and Use of College Facilities and Services policies prohibiting free speech activity on campus and the application of such policies to Plaintiffs' free speech activity;

G. Monetary damages in an amount to be determined by the Court to compensate Plaintiffs for Defendants' application of their policies to prevent Plaintiffs from engaging in their free speech activity and disseminating information;

H. Plaintiffs' reasonable costs and expenses of this action, including attorney fees, pursuant to 42 U.S.C. § 1988(b), 740 ILCS 23/5(c), or any other applicable law;

I. All other further relief to which Plaintiffs may be entitled.

Respectfully submitted,

**MAUCK & BAKER, LLC**

/s/ Whitman H. Brisky

Dated: July 16, 2014

Whitman H. Brisky
Jeffrey M. Schwab
Mauck & Baker, LLC
One North LaSalle Street, Suite 600
Chicago, Illinois 60602
Telephone: (312) 726-1243
Facsimile: (866) 619-8661
wbrisky@mauckbaker.com
jschwab@mauckbaker.com
Participating Attorneys for the Rutherford Institute

F:\Clients\3168\Pleadings\Complaint.docx